**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA SHASHA AND VIVIENNE PERO, CO-TRUSTEES OF THE VIOLET SHUKER SHASHA TRUST, LAURENCE ADLER AND SHIRLEY ADLER, TRUSTEES OF THE ADLER FAMILY TRUST, MYRNA JOY EDELMAN, TRUSTEE OF THE 2006 GILBERT M. EDELMAN INTER VIVOS TRUST, THE EMPIRE STATE LIQUIDITY FUND LLC, MARY JANE FALES, MELVYN H. HALPER, PHYLLIS J. HALPER, AND WENDY TAMIS,

Petitioners,

-against-

PETER L. MALKIN, ANTHONY E. MALKIN, THOMAS N. KELTNER, JR, AND ESRT MH HOLDINGS, LLC,

Respondents,

Case No. 1:21-cv-6887

**PETITION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT**

Virginia Shasha and Vivienne Pero, Co-Trustees of the Violet Shuker Shasha Trust, Laurence Adler and Shirley Adler, Trustees of the Adler Family Trust, Myrna Joy Edelman, Trustee of the 2006 Gilbert M. Edelman Inter Vivos Trust, the Empire State Liquidity Fund LLC, Mary Jane Fales, Melvyn H. Halper, Phyllis J. Halper, and Wendy S. Tamis ("Petitioners"), by and through their undersigned counsel, respectfully petition this Court to confirm the Final Award entered on August 26, 2020, in the arbitration styled *Virginia Shasha and Vivienne Pero, Co-Trustees, et al., v .Peter L. Malkin, et al.,* AAA No. 01-14-0001-6986.

In their Final Award, a panel of three American Arbitration Association ("AAA") arbitrators, Charles F. Forer, Bennett Picker, and David C. Singer, held that Respondents Peter L. Malkin, Anthony E. Malkin, Thomas N. Keltner, Jr., and ESRT MH Holdings, LLC, are jointly

and severally liable to Petitioners for a total of $1,165,160.20, including pre-award interest, and ordered Respondents to pay the award by October 2, 2020. The arbitration concerned claims arising from the consolidation in 2013 of several partnerships to create a real estate investment trust ("REIT"). Respondents have failed and refused to pay the award. Petitioners' share of the award totals $971,695.50. A true and correct copy of the Final Award is attached as Exhibit 1 to the Declaration of John Wyeth Griggs ("Griggs Declaration"), filed herewith.

Opposition to a petition to confirm an arbitration award may only be made pursuant to Sections 10 or 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§10, 11, by motion or petition filed and served within three months of the issuance of the award. *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 175-76 (2d Cir. 1984). This Court has dismissed Respondents' vacatur petition because it was not timely served. *Malkin, et al., v. Shasha, et al.,* Docket No. 20-CV-9874 (AT), Order dated August 4, 2021 (ECF #58). Accordingly, Respondents are time-barred from objecting to confirmation of the award.

In support of this petition, Petitioners state as follows:

JURISDICTION AND VENUE

1. Confirmation of an arbitration award is expressly authorized by Section 9 of the Federal Arbitration Act, 9 U.S.C. §9, which states that an application to confirm an award may be made to the United States District Court for the district in which the award was made. Jurisdiction in this Court is proper because the arbitration award was made in New York City.

2. The arbitration was conducted in accordance with the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* Federal question jurisdiction exists under 28 U.S.C. §1331 as the arbitration involved claims under Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15

U.S.C. §§78j(b) and 78n(a), and SEC Rules 10b-5, 17 CFR §240.10b-5, and 14a-9, 17 CFR §240.14a-9.

3. Venue is proper under 28 U.S.C. §1391(b). The actions giving rise to the arbitration occurred in New York, and the Respondents reside or work in New York.

PARTIES

4. Petitioners were owners of participating units in Empire State Building Associates ("ESBA"), a partnership that owned the Master Lease for the Empire State Building.

5. Petitioner Violet Shuker Shasha Trust, a trust created under the laws of the State of Florida, is represented by its co-trustees, Virginia Shasha and Vivienne Pero, who reside at One Deer Run, Chappaqua, New York 10414. The Trust held two (2) participation units in ESBA.

6. Petitioner Adler Family Trust, a trust created under the laws of the State of Arizona, is represented by its trustees, Laurence Adler and Shirley Adler, who reside at 20804 Noble Terrace, Unit No. 209, Sterling, VA 20165. The Trust held one (1) participation unit in ESBA.

7. Petitioner 2006 Gilbert M. Edelman Inter Vivos Trust, a trust created under the laws of the State of California, is represented by its trustee, Myrna Joy Edelman, who resides at 6250 11th Avenue South, St. Petersburg, FL 33707. The Trust held five (5) participation units in ESBA.

8. Petitioner Empire State Liquidity Fund LLC is a limited liability company organized under the laws of the State of Delaware. Its managing agent is Andrew Penson, 551 Fifth Avenue, New York, NY 10176. It held nine and one-tenth (9.1) participation units of ESBA.

9. Petitioner Melvyn H. Halper is an individual residing at 9 Latonia Road, Rye Brook, New York 10573. He held one-quarter (0.25) of a participation unit in ESBA, as well as interests in other properties that were consolidated in the REIT.

10. Petitioner Phyllis J. Halper is an individual residing at 9 Latonia Road, Rye Brook, New York 10573. She held approximately one and one-half (1.5625) participation units in ESBA.

11. Petitioner Wendy S. Tamis is an individual residing at 10 Trotter Lane, North Salem, New York 10560. She held one-half (0.50) of a participation unit in ESBA.

12. Petitioner Mary Jane Fales is an individual residing at 288 Beach Drive NE, Unit 5A, St. Petersburg, FL 33707. She held seven (7) participation units in ESBA.

13. Respondent Peter L. Malkin is a principal of ESRT MH Holdings, LLC, was a member of ESBA, an agent of the Participants under the Participating Agreements, and owed fiduciary duties to Petitioners. His address is One Grand Central Place, 60 East 42nd Street, Apt. 38, New York, NY 10165.

14. Respondent Anthony E. Malkin is a principal of ESRT MH Holdings, LLC, was a member of ESBA, an agent of the Participants under the Participating Agreements by assignment, and owed fiduciary duties to Petitioners. He is also CEO and Chairman of the Board of Directors, Empire State Realty Trust, Inc., 111 West 33rd Street, New York, NY 10120.

15. Respondent Thomas N. Keltner, Jr., is a principal of ERT MH Holdings, LLC, was a member of ESBA, an agent of the Participants under the Participating Agreements by assignment, and owed fiduciary duties to Petitioners. He is also General Counsel, Empire State Realty Trust, Inc., 111 33rd Street, New York, NY 10120.

16. Respondent ESRT MH Holdings LLC, formerly Malkin Holdings, LLC, is a limited liability company organized under the laws of the State of New York. Malkin Holdings, LLC acted as the supervisor for ESBA and other properties included in the REIT and owed fiduciary duties to Petitioners. Malkin Holdings, LLC controlled all of the properties included in the REIT, and controlled every aspect of the roll-up and consolidation to create the REIT. In October 2013, Malkin Holdings LLC became a wholly owned subsidiary of Empire State Realty Trust, Inc., a Maryland corporation. Malkin Holdings, LLC changed its name to ESRT MH Holdings, LLC in September 2014.

## FACTS

### **Purchase of the Empire State Building**

1. ESBA was a joint venture partnership created in 1961 for the purpose of acquiring the Empire State Building. The partnership was organized into three groups, each with its own Participating Agreement. Each group was responsible for 1,100 participation units that were sold to investors ("Participants") for $10,000 per unit. Messrs. Lawrence Wien, Henry Klein, and Peter Malkin each served as agent for one of the three groups and assumed contractual and fiduciary duties to the Participants in their respective groups.

2. Each of the Claimants in the arbitration, including each Petitioner, was an ESBA Participant under one of the three Participating Agreements. The Participating Agreements are attached as Exhibits 2, 3, and 4 of the Griggs Declaration.

3. Each Participating Agreement contains identical provisions that limited the agents' ability to act without the Participants' unanimous consent. Paragraph 4 of the Participating Agreements provides that: "The Agent shall not agree to sell, mortgage or transfer The Property or the Master Lease, nor to renew or modify the Master Lease, nor to make or

modify any mortgage thereon, nor to make or modify any sublease affecting the premises, nor to convert the partnership to a real estate investment trust, a corporation or any other form of ownership, nor to dispose of any partnership asset in any manner, without the consent of all of the Participants."

4. Each of the Participating Agreements contains a disputes clause, Paragraph 12, page 8, binding the Participants to arbitration before the AAA in New York City.

5. Lawrence Wien, along with real estate developer Harry Helmsley, formed a separate partnership, Empire State Building Company ("ESBC"), which, through a sublease with ESBA, was responsible for the Empire State Building's operation and management.

6. The partnerships' organizational documents and solicitation materials were filed with the Securities and Exchange Commission ("SEC") in 1961, and Wien, Lane & Klein sold 3,300 ESBA investment units to raise $33 million for purchase of the Empire State Building.

7. The original agents for the Participating Agreements were partners in the law firm of Wien, Lane & Klein, which the 1961 Partnership Agreement designated as supervisor of ESBA. Respondent Peter Malkin was an original agent and partner. Respondents Anthony Malkin and Thomas Keltner became agents and partners by assignment. Malkin Holdings, now Respondent ESRT MH Holdings LLC, assumed the law firm's responsibilities as supervisor in 2009.

8. Peter L. Malkin, Mr. Wien's son-in-law, assumed control of Wien, Lane & Klein, renamed Wien & Malkin, and assumed Mr. Wien's partnership interests following Mr. Wien's death in 1988.

9. In 1991, Mr. Malkin solicited approval from ESBA Participants for a "voluntary compensation program." Participants were asked to agree that the supervisor, Wien & Malkin,

would receive payments equal to 10% of the proceeds to which the investors would be entitled in any future sale, financing, or similar transaction of the Empire State Building.

10. After additional solicitations in 2001 and then again in 2008, Mr. Malkin claimed that over 94% of Participants had signed consents to the voluntary compensation program.

11. In 2001 Peter Malkin, Anthony Malkin, Thomas Keltner, and Malkin Holdings, LLC (collectively "the Malkins") converted the ESBA partnership to a limited liability company ("LLC") without the approval of the Participants, and in 2011, the Malkins amended the ESBA LLC operating agreement, again without Participant approval, eliminating the Participants' exclusive right under Paragraph 4 of the Participating Agreements to approve major changes regarding the Empire State Building.

**Creation of the REIT**

12. On November 29, 2011, after two years of preparation and planning, the Malkins informed Participants that they intended to include the Empire State Building in a real estate investment trust. On February 12, 2012, the Malkins filed with the SEC their draft Form S-4 Prospectus/Consent Solicitation Statement. The S-4 described a consolidation of the Empire State Building and 18 other properties in the greater New York metropolitan area. The proposed REIT had an appraised value of $5.2 billion and a total exchange value of $4.8 billion. Each ESBA unit was given an exchange value of $358,670 if not subject to overrides.

13. On January 21, 2013, the final S-4 was sent to Participants, and a 60-day solicitation period to obtain Participants' approval of the REIT commenced. On March 21, 2013, having failed to obtain the requisite number of Participant approvals, the Malkins unilaterally extended the solicitation for an indefinite period.

14. On May 31, 2013, the Malkins declared that they had obtained approval from a supermajority of Participants, and on June 12, 2013, the Malkins sent "buyout" notices to Participants who had not approved the REIT, requiring those Participants to approve the REIT within ten days or suffer forced sale of their units to the Malkins at $100 per unit.

15. On October 2, 2013, at an initial public offering ("IPO"), the Participants' ESBA investment units were exchanged for stock in Empire State Realty Trust, Inc. ("ESRT"). Many Participants learned for the first time that the ESRT shares they received in the IPO were reduced by 10% due to the Malkins' deduction of an "override." Others remained unaware that deductions for the overrides were taken automatically. They also learned that the value of the ESRT stock received for each ESBA unit was $223,678.

**The Arbitration**

16. On October 14, 2014, twelve claimants (including Petitioners) ("Claimants") filed their Statement of Claim and demand for arbitration with the AAA, *Emil Shasha, Trustee, et al., v. Peter L. Malkin, et al.,* AAA No. 01-14-0001-6986. On December 18, 2014, the same twelve Claimants filed suit against the Respondents in the United States District Court for the Southern District of New York, *Shasha, et al., v. Malkin, et al.,* SDNY No. 14-CV-9989 (AT)(RWL), alleging violations of the federal securities laws. The federal case was stayed pending completion of the arbitration by order of the Honorable Analisa Torres entered March 12, 2015.

17. The Statement of Claim, as amended and supplemented, alleged violations of the federal securities laws, breach of fiduciary duties, fraud, and breach of contract. The Malkins asserted seven counterclaims for $10 million against three claimants and two non-parties, alleging defamation *per se* and violations of Section 14(a) of the Securities Exchange Act of 1934. Two counterclaims were dismissed by the arbitrators. Four were withdrawn. A single

$10 million defamation *per se* counterclaim against a 90-year-old claimant remained and was denied by the arbitrators in their Final Award.

18. The arbitration hearing commenced on April 24, 2016, and continued for a total of 39 hearing days spread over two years. The hearing produced a record of over 8,400 pages of transcripts and 580 exhibits. Petitioners submitted testimony of 25 witnesses. Respondents submitted testimony of 13 witnesses. During the hearing, Petitioners moved to add additional claims not set forth in their statement of claim but were denied the opportunity to do so. The hearing concluded on August 7, 2018.

**The Final Award**

19. The Final Award was issued on August 26, 2020. Petitioners raised numerous issues, certain of which were addressed in the Final Award, while others were not actually litigated or decided. The arbitrators decided one issue in favor of Petitioners, the override payment claim.[1]

20. The arbitrators held that "the Overrides are not enforceable against Claimants." Final Award at 26. Based in part on a statement in the S-4 that the Supervisor did not pay any consideration for the overrides, and on Anthony Malkin's testimony that he stood by the accuracy of statements in the S-4, the arbitrators held "that the Supervisor did not provide consideration in exchange for the Overrides." Final Award at 24. The arbitrators noted that the value of the overrides to the Malkins was $304 million. Final Award at 20.

21. The arbitrators calculated each Claimant's damages for the overrides based on the testimony of Claimants' expert witness, Jeffrey M. Risius, and also on Respondents' own expert

---

[1] The arbitrators also dismissed the one remaining defamation counterclaim against Claimant Edelman Family Trust, a separately represented party.

Paul Habibi. Final Award a 94. The arbitrators also included interest through October 2, 2020, the date that they ordered Respondents to pay the Award. Final Award at 94. Damages awarded were as follows:

1. Edelman Family Trust, Danielle P. Barger Trustee: $193,464.70 (Principal amount of $118,690.00 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $74,774.70).[2]

2. 2006 Gilbert M. Edelman Inter Vivos Trust, Myrna Joy Edelman Trustee: $193,464.70 (Principal amount of $118,690.00 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $74,774.70).

3. Adler Family Trust, Laurence Adler and Shirley Adler Trustees: $38,692.94 (Principal amount of $23,738.00 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $14,954.94).

4. Violet Shuker Shasha Living Trust, Virginia Shasha and Vivienne Pero Co-Trustees: $77,385.88 (Principal amount of $47,476.00 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $29,909.88).

5. Empire State Liquidity Fund LLC: $301,804.93 (Principal amount of $185,156.40 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $116,648.53).

6. Mary Jane Fales: $270, 850.58 (Principal amount of $166,166.00 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $104,684.58).

7. Melvyn H. Halper: $9,673.24 (Principal amount of $5,934.50 plus 9% interest from October 2, 2020 to October 2, 2020 in the amount of $3,738.74).

8. Phyllis J. Halper: $60,477.06 (Principal amount of $37,102.49 plus 9% interest from October 2, 2013 to October 2, 2020 in the amount of $23,374.57).

9. Wendy S. Tamis: $19,346.47 (Principal amount of $11,869.00 plus 9% interest from October 2. 2013 to October 2, 2020 in the amount of $7,477.47).

22. The arbitrators denied eleven of the issues raised by Claimants, denied Respondents' counterclaim, and declined to award attorneys' fees or costs.

[2] The Edelman Family Trust is separately represented and is not included in this Petition. Accordingly, its award is not included in the total award for Petitioners of $971,695.80.

23. To date, Respondents have failed and refused to comply with the arbitrators' order to pay the award on or before October 2, 2020.

AUTHORITY

24. Authority to confirm the award and enter judgment is clear. Section 9 of the FAA states that, upon application to a court to confirm an award, "the court *must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. §9 (Emphasis Added). "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir.1984), and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006). "[T]he award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Id.,* citing *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 121 (2d Cir. 1991). In this case, vacatur or modification under FAA Sections 10 and 11 is not possible because such actions are now time-barred. Confirmation is *unopposed,* and therefore confirmation *must* be granted.

25. The arbitrators provided the basis and rationale for their ruling that the overrides were not supported by consideration. Final Award at 16-26. Moreover, additional grounds can be inferred from the facts of the case. *D.H. Blair, supra*. A number of claimants were unaware that overrides had been taken. Griggs Affidavit, Exhibit No. 9, Tr. 2228:5-23; 2227:9-16; 1281:23-1282:4; 1198:6-21; 1150:9-1153:12; 580:10-13; 539:23-540:2. Most Participants had no idea what an "override" was. Ex. No. 9, Tr. 1281:23-1282:4; 1197:16-20; 721:8-10; 539:20-22. The 1991, 2001, and 2008 solicitations for the voluntary compensation program never used the word "override." Griggs Affidavit, Exhibit Nos. 5, 6, 7. See also, Exhibit No. 9, Tr. 2307:7-

2308:19; 2114:21-2116:8. Participants including former partners of the Malkins did not believe that their consent to the voluntary compensation program created an "override" contract, or that they had otherwise agreed to a 10% deduction. Tr. 7888:24-7889:5; 2227:9-16; 1012:3-23; 721:11-14; 540:23-541:2; 479:2-20. *See also* Robert Machleder letter to investors, Griggs Affidavit, Ex. No. 8. Nor did the mention of overrides in the S-4 trigger in Participants' minds a recognition that "overrides" referred to the voluntary compensation program. Griggs Affidavit, Exhibit No. 9, Tr. 2228:5-23; 1147:11-14, 1150:9-12, 1151:10-23. In fact, use of the term "override" effectively concealed from many Participants the Malkins' plan to divert 10% of their investors' entitlement to themselves.

26. Thus, there was no contractual right to the overrides because there was no meeting of the minds between the Malkins and the Participants regarding overrides. Absent a meeting of the minds on essential terms, there can be no contract. *Kolchins v. Evolution Markets, Inc.,* 128 A.D.3d 47, 58, 8 N.Y.S.3d 1, 18 (1st Dept. 2015) (meeting of the minds on all essential terms is required to form a contract). *Accord*, *Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp*., 93 N.Y.2d 584, 590, 715 N.E.2d 1050, (1999); *Galesi v. Galesi*, 37 A.D.3d 249, 249, 829 N.Y.S.2d 107 (1st Dept 2007); *May v. Wilcox*, 182 A.D.2d 939, 940, 582 N.Y.S.2d 294 (3d Dept 1992).

27. Because the only challenge to the Final Award was dismissed by this Court's August 4, 2021 Order in Docket 20-CV-9874 (AT), confirmation of the Award should proceed summarily. *Anglim v. Vertical Grp.,* No. 16 Civ. 3269 (KPF), 2017 WL 543245 (S.D.N.Y. Feb. 10, 2017). But even if the Award were subject to challenge, it must be confirmed because the arbitrators have explained their reasoning, their conclusion is based on the record, and additional grounds to sustain the award can be inferred from the facts of the case.

CONCLUSION

Accordingly, Petitioners respectfully request that that the Court confirm the Final Award and enter judgment in favor of Petitioners and against Respondents, jointly and severally, in the amount of $971,695.80. In addition, Petitioners also respectfully request prejudgment and post-judgment interest. As this Court has held:

> There is a "presumption in favor of prejudgment interest." *N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc.,* No. 11 Civ. 8425, 2012 WL 2958265, at *4 (S.D.N.Y. July 20, 2012) (internal quotation marks omitted). Courts in this Circuit routinely "grant interest at a rate of nine percent per annum—which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001-5004—from the time of the award to the date of judgment confirming the award." *Id.*; *Serv. Emps. Int'l Union, Local 32BJ v. Stone Park Assocs.*, 326 F. Supp. 2d 550, 556 (S.D.N.Y. 2004) (granting "prejudgment interest at a rate of 9% per annum on the amounts due from the date of the award to the judgment").

*Media Force Ltd. v. Precise Leads, Inc.,* 20 Civ. 4050 (AT), (S.D.N.Y. Nov 30, 2020). The arbitration Final Award included prejudgment interest at 9% from August 26, 2020, to October 2, 2020, the date that the arbitrators ordered the Award to be paid. Accordingly, Petitioners request prejudgment interest from October 2, 2020, to the date of judgment herein.

The Court continued in *Media Force*:

> "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996). Post-judgment interest is governed by the statutory rate in 28 U.S.C. § 1961, which states: Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

*Media Force Ltd. v. Precise Leads, Inc., supra*. Petitioners request post-judgment interest accordingly.

**WHEREFORE,** Petitioners respectfully requests an order:

a) confirming the Final Award, including the monetary relief granted therein, and entering judgment in favor of Petitioners and against Respondents, jointly and severally, in accordance with the Final Award;

b) awarding prejudgment interest at the statutory rate of 9% from October 2, 2020, to the date that judgment is entered;

c) awarding post-judgment interest at the statutory rate;

d) awarding costs and reasonable attorney fees incurred in connection with this action; and

e) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 16, 2021

GRIGGS & ADLER, P.C.

*/s/ John W. Griggs*
John Wyeth Griggs
2513 Fowlers Lane
Reston, VA 20191
(703)716-2863
Fax: (703)716-2865
griggsandadler@comcast.net
*Pro Hac Vice Counsel for Petitioners*

Peter M. Levine
444 Madison Avenue, Suite 410
New York, NY 10016
(212) 599-0009
chief@pmlevinelaw.com
*Counsel for Petitioners*